**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PAULA BENJAMIN,

      Plaintiff,

      v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION

      Defendants.

No. 3:15-cv-1772 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of the plaintiff, Paula Benjamin's,

application for disability insurance benefits. The appeal is brought pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).[1] Ms. Benjamin now moves for an order reversing the decision of the

Commissioner of the Social Security Administration ("Commissioner").  In the alternative, Ms.

Benjamin seeks an order remanding her case for a rehearing.  The Commissioner, in turn, has

moved for an order affirming the decision.

Ms. Benjamin argues, among other things, that the Administrative Law Judge ("ALJ")

erred in concluding that Ms. Benjamin's medical conditions did not meet or medically equal a

---

[1]  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs").  *See* 20 C.F.R. §§ 404.929 *et seq.* Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council.  *See* 20 C.F.R. §§ 404.967 *et seq.*  If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. The Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

listed impairment, which would have made her *per se* disabled, and that the ALJ did not properly apply the treating physician rule in determining Ms. Benjamin's Residual Functional Capacity ("RFC"). Although I find that the ALJ did not err in concluding that Ms. Benjamin's conditions did not medically equal a listed impairment, I agree with Ms. Benjamin that the ALJ improperly applied the treating physician rule as to opinions about concentration problems and the need for unscheduled breaks. The case is therefore REMANDED. I do not reach Ms. Benjamin's remaining arguments urging reversal or remand.

## **FACTS**

On August 26, 2013, Ms. Benjamin filed an application for disability benefits for an alleged disability that commenced on March 15, 2013, and continued through the date of the ALJ's decision. (Pl's Mem., ECF No. 15-1 at 2-3; D's Mem., ECF No. 16-1 at 1.) On October 16, 2013, a disability adjudicator in the Social Security Administration denied her initial request for disability benefits and thereafter denied her request for reconsideration. (*Id*.) On December 17, 2014, Ms. Benjamin appeared with counsel for a hearing before Administrative Law Judge Denise Horton. (*Id*.)  On February 20, 2015, the ALJ issued a decision denying benefits. (*Id*.)

The ALJ found that Ms. Benjamin was a 56 year old woman with severe impairments of degenerative disc disease, chondromalacia of the right knee, and obesity. (ALJ Decision, ECF No. 13-3 at 45.) The ALJ determined that Ms. Benjamin did not have a listed impairment, had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567, was able to perform past relevant work, and was therefore not disabled within the meaning of the Social Security Act. (*Id.* at 45-56.) On October 8, 2015, the appeals council denied Ms. Benjamin's request for review of that decision, thereby making the ALJ's decision the final decision of the Commissioner. (ECF No. 15-1 at 2-3; ECF No. 16-1 at 2.) This appeal followed.

Specific facts and portions of the ALJ's decision will be discussed below as necessary.

## STANDARD

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means... [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2] To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot... engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

"A district court reviewing a final... decision pursuant to… 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, a district court may not make

---

[2] The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4).

a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability

benefits. *Wagner v. Sec'y of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir. 1990).  Rather,

the court's function is to ascertain whether the correct legal principles were applied in reaching

the decision, and whether the decision is supported by substantial evidence.  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987).  If the Commissioner's decision is supported by substantial

evidence, that decision will be sustained, even where there may also be substantial evidence to

support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (internal citation and quotation marks omitted).  Substantial evidence must be

"more than a mere scintilla or a touch of proof here and there in the record."  *Id.*

## DISCUSSION

**I.      Listed Impairment**

I must first decide whether substantial evidence supported the determination that Ms.

Benjamin's condition did not meet or medically equal a listed impairment,[3] which would have

made her disabled *per se*. 20 C.F.R. § 404.1520(a)(4)(iii). "For a claimant to qualify for benefits

by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a

listed impairment, he must present medical findings equal in severity to *all* the criteria for the

one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (quoting 20

C.F.R. § 416.926(a); footnote omitted).

---

[3] This is step three of the five-step evaluation process described *supra*, note 2. Ms. Benjamin
does not dispute the ALJ's determinations at steps one and two.

At issue in this case is Listing 1.02A, the listed impairment of "[m]ajor dysfunction of a joint(s)," which describes "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02A.[4] According to the regulations, inability to ambulate effectively is "an extreme limitation of the ability to walk" and examples include:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B(2)(b). Ms. Benjamin disagrees with the ALJ's finding that "the medical record does not show an inability to effectively ambulate." (ECF No. 13-3 at 45.) She argues that the ALJ did not make specific findings that could support this determination, and that the evidence demonstrates that she could *not* effectively ambulate, because she needs to hold on to walls and use a cane or walker. (ECF No. 15-1 at 10.)

With regards to Ms. Benjamin's claim that the ALJ did not make sufficiently specific findings, "[a]lthough we have cautioned that an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (internal citation and quotation marks omitted). Here, though the finding that Ms. Benjamin could effectively ambulate was not immediately

---

[4] The ALJ also determined that Ms. Benjamin's condition did not meet or medically equal Listing 1.04, for spinal disorders, but Ms. Benjamin does not challenge that determination in her motion. (ECF No. 13-3 at 45.)

accompanied by a rationale, the ALJ did discuss Ms. Benjamin's ability to move and walk in

other parts of the decision (ECF No. 13-3 at 46-47). The ALJ noted, for example, that Ms.

Benjamin's activities of daily living, including caring for her mother and grandmother,

laundering clothes, dusting her home, driving, and shopping, "indicate a good ability to stand,

walk, sit, lift considerable weight and otherwise function." (*Id.* at 47.) This is not a case "in

which we would be unable to fathom the ALJ's rationale in relation to evidence in the record,"

and thus there is no need to remand for clarification. *Salmini*, 371 at 113. (internal citation and

quotation marks omitted.)

Substantial evidence supports the ALJ's determination that Ms. Benjamin's condition did

not satisfy Listing 1.02A. Specifically, the ALJ noted that "Kerry-Ann Miller, M.D., a treating

physician, opined that the claimant's lumbar and right knee conditions would not preclude her

from…standing and walking a total of seven hours in an eight-hour day." (ECF No. 13-3 at 47.)

State agency physician Dr. Maria Lorenzo, whose review of the record was cited by the ALJ (*id.*

at 46), concluded that Ms. Benjamin could "stand and/or walk (with normal breaks)" for "about

6 hours in an 8-hour workday" and "occasionally" "climb[] Ramps/stairs." (ECF No. 13-4 at

16.)  Although Ms. Benjamin also supports her position with evidence from medical records and

her own testimony (ECF No. 15-1 at 10), that is not sufficient to overturn the ALJ's factual

determination. "Where there is substantial evidence to support either position, the determination

is one to be made by the factfinder," i.e., the ALJ. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.

1990).

## II.    Treating Physician Rule

Ms. Benjamin next argues that the ALJ failed to properly consider the conclusions of her

treating physician, Dr. Miller, in determining her RFC.[5] Specifically, the ALJ disregarded Dr.

Miller's opinions that (1) Ms. Benjamin could only sit for four hours in an eight hour day; (2) her

symptoms would interfere with her ability to maintain attention and concentration; and (3) she

would require unscheduled breaks during a workday. (ECF No. 13-3 at 47.) Instead the ALJ

concluded that Ms. Benjamin "required an hourly option to change position from sitting to

standing for five minutes." (*Id.* at 46.) The ALJ's decision to give these opinions little weight is

significant, because the Vocational Expert testified that either if Ms. Benjamin's sitting was

limited to four hours total *or* if she were off task for 15 percent of the time or longer *or* if she

was required to change positions every 20 minutes, she would not be able to perform her past

work. (*Id.* at 125-26.) But, according to the Vocational Expert, if she merely needed to change

position for five minutes every hour, Ms. Benjamin could perform her past work and thus would

not be disabled. (*Id.*)

Under the treating physician rule, "the opinion of a claimant's treating physician as to the

nature and severity of the impairment is given controlling weight so long as it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d

Cir. 2008) (internal citation and quotation marks omitted.) *See also Halloran v. Barnhart*, 362

F.3d 28, 32 (2d Cir.2004) (per curiam) ("the opinion of the treating physician is not afforded

controlling weight where… the treating physician issued opinions that are not consistent with

---

[5] As described *supra*, note 2, if the claimant is not found to be disabled at step three, the ALJ
next determines the claimant's residual functional capacity ("RFC") and, at step four, determines
whether he or she would be able to perform past relevant work with that RFC.

other substantial evidence in the record, such as the opinions of other medical experts"). "The

regulations further provide that even if controlling weight is not given to the opinions of the

treating physician, the ALJ may still assign some weight to those views, and must specifically

explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297,

301 (D. Conn. 2009). The Second Circuit has made clear that:

> To override the opinion of the treating physician… the ALJ must explicitly consider,
> *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of
> medical evidence supporting the opinion; (3) the consistency of the opinion with the
> remaining medical evidence; and, (4) whether the physician is a specialist. After
> considering the above factors, the ALJ must comprehensively set forth his reasons for the
> weight assigned to a treating physician's opinion.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and

alterations omitted). "The failure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand." *Id.*

In this case, first, the ALJ gave little weight to Dr. Miller's determination that Ms.

Benjamin could only sit for four hours in an eight hour day "because the opinion does not

address the fact that the claimant had been non-compliant with treatment recommendations

without good reason, and the records did show that a steroid injection had proved to be beneficial

for the claimant's knee condition." (ECF No. 13-3 at 47.) The ALJ appears to have given greater

weight to the non-examining state agency physician, Dr. Lorenzo, who stated that Ms. Benjamin

could sit about six hours in an eight hour workday. (ECF Nos. 13-3 at 46; 13-4 at 16.)  The ALJ

found that some of Dr. Lorenzo's opinions contradicted Dr. Miller's, and were "consistent with

the record as a whole," in particular "[m]usculoskeletal and neurological exams performed by

treating physicians during the relevant period [which] did not regularly demonstrate any deficits

or abnormalities other than reduced lumbar range of motion." (ECF No. 13-3 at 46.)

I conclude that the ALJ's decision not to give controlling weight to Dr. Miller's opinion about sitting time was supported by substantial evidence. Dr. Miller's opinion was "not consistent with the opinions of other medical experts," in this case, the agency physician, Dr. Lorenzo. *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014). *See also Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). The ALJ also cited other medical evidence in the record to support Dr. Lorenzo's conclusions. (ECF No. 13-3 at 46.) Together, this amounts to substantial evidence to undermine the treating physician's opinion regarding hours of sitting per day. *See Tyson v. Astrue*, 2010 WL 4365577, at *10 (D. Conn. June 15, 2010) ("the opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record.") (internal citation omitted).

The ALJ's decision to give little weight to the treating physician's opinions regarding attention and concentration and unscheduled breaks, however, did not comport with the treating physician rule. The ALJ gave little weight to Dr. Miller's conclusion that Ms. Benjamin's symptoms would interfere with her ability to maintain attention and concentration "because psychological functioning is outside her realm of expertise and no support or explanation for the opinion was provided." (ECF No. 13-3 at 47.) She also gave little weight to the conclusion that Ms. Benjamin would require unscheduled breaks during a workday "because no basis therefor[] was provided and it could only have been based on speculation." (*Id*.) Instead of giving controlling weight to the treating physician's opinions, the ALJ determined that Ms. Benjamin

was capable of performing "light work" but required "an hourly option to change position from sitting or standing for five minutes." (*Id.* at 46.)

First, the ALJ's rejection of Dr. Miller's opinion on the need for unscheduled breaks was based on a factual error. Contrary to the ALJ's assertion that "no basis therefor[] was provided and it could only have been based on speculation" (*id.* at 47), Dr. Miller did provide a basis. Specifically, she stated that "prolonged sitting worsens back pain." (ECF No. 13-8 at 193.) Admittedly, this statement, taken in isolation, is probably a truism, and provides little information about why the claimant would need to take unscheduled work breaks, as opposed to alternating periodically between sitting and standing. Important context, however, may be supplied by information about the treating relationship between Dr. Miller and Ms. Benjamin—a factor identified in *Greek*, but one that the ALJ failed to "explicitly consider." 802 F.3d at 375 (internal citation and quotation marks omitted). Specifically, the ALJ's decision discloses no consideration of the "frequency, length, nature, and extent of treatment," *id.* at 375 (internal citation, quotation marks and alteration omitted), by Dr. Miller, and how those factors may have informed or explained Dr. Miller's opinions.

Nor, in rejecting the treating physician's opinions regarding both breaks and concentration, did the ALJ explicitly consider the "consistency of the opinion with the remaining medical evidence" as required by 20 C.F.R. § 404.1527(c) and *Greek. Id.* (internal citation and quotation marks omitted). For example, the ALJ did not discuss the possibility that Dr. Miller's opinion that the claimant would need to take unscheduled breaks was reinforced by her opinion that the claimant's symptoms would "often" be severe enough to interfere with the attention and concentration needed to perform simple work-related tasks.  (ECF No. 13-8 at 191.) Specifically, the ALJ did not consider the possibility that the two opinions expressed the same essential point:

10

that because of her back pain, the claimant would "often" be off task. Again, the weight properly attributable to that point depended in part on the frequency and depth of the treating relationship, which the ALJ did not explicitly consider. The ALJ also cited no evidence to contradict or cast doubt upon Dr. Miller's opinions on these issues.

Further, the ALJ incorrectly rejected Dr. Miller's opinion on concentration "because psychological functioning is outside of her realm of expertise." (ECF No. 13-3 at 47.) "[W]hether the physician is a specialist" is indeed one of *Greek* factors, 802 F.3d at 375 (internal citation and quotation marks omitted), but Dr. Miller had no need to be a psychological specialist to determine that Ms. Benjamin's "symptoms associated with [her] impairments," i.e., her back pain, were often "severe enough to interfere with the attention & concentration required to perform simple work-related tasks." (ECF No. 13-8 at 191.) Dr. Miller was treating Ms. Benjamin for knee and back pain (*id.*) and thus her conclusion about concentration was likely based on Ms. Benjamin's pain rather than her psychological functioning. Again, the ALJ failed to consider the treating relationship between Dr. Miller and Ms. Benjamin, that of a medical doctor treating a patient for pain. *See Greek*, 802 F.3d at 375.

Finally, and perhaps most significantly, the ALJ offered no evidence or citation to the record in support of her conclusion that Ms. Benjamin "has required an hourly option to change position from sitting to standing for five minutes." (ECF No. 13-3 at 46.) The Commissioner similarly fails to cite any evidence for this conclusion in her memorandum. (ECF No. 16.) As far as I can discern, neither Ms. Benjamin, Dr. Miller, nor Dr. Lorenzo stated that Ms. Benjamin needed an hourly option to change position for five minutes. To the contrary, Ms. Benjamin stated that she "can sit about half an hour, 20 minutes intervals," Dr. Miller opined that Ms. Benjamin required unscheduled breaks, and Dr. Lorenzo did not mention either breaks or

position changes. (ECF Nos. 13-3 at 88; 13-4 at 12-19; 13-8 at 191.) In fact, the only apparent

reference to the five minute position change is in the ALJ's own questioning of the Vocational

Expert during the hearing. (ECF No. 13-3 at 125.) This is improper, because, as the Second

Circuit has explained, the "ALJ is not permitted to substitute his own expertise or view of the

medical proof for the treating physician's opinion or for any competent medical opinion." *Greek,*

802 F.3d at 375.  For example, in a case where the record included contradictory medical

evidence stating that the claimant either had "total loss of function" of his hand, or the hand was

"intact," the ALJ was *not* permitted to conclude that the claimant "could use his hand fifty

percent of the time." *Mariani*, 567 F. App'x at 10. "Medical evidence at both ends of the

spectrum… is not substantial evidence for a finding that the extent of the disability is fifty

percent capacity." *Id.*

Therefore, the ALJ's decision to give little weight to Dr. Miller's opinions on breaks and

concentration did not comport with the treating physician rule, and the ALJ's conclusion that Ms.

Benjamin required an hourly option to change position from sitting to standing for five minutes

was not supported by substantial evidence.

This error was not harmless. The Vocational Expert testified that Ms. Benjamin's past

work in teaching and child development was at the light exertional level.[6] (ECF No. 13-3 at 123-

25.) He further testified that "if someone is off task for 15 percent of the time or longer they

would not be able to maintain competitive employment" and if Ms. Benjamin were required to

change positions every 20 minutes, she would not be able to perform her past work. (*Id.* at 126-

27.) The ALJ found the Vocational Expert's testimony to be "credible." (*Id.* at 48.) It appears

---

[6] He also testified that her past job as a resident care aide was at the medium exertional level.
(ECF No. 13-3 at 123.)

likely that, had the ALJ given controlling weight to Dr. Miller's opinions, she would have concluded that Ms. Benjamin could not perform her past relevant work. This would then have required the ALJ to proceed to the final step of the evaluation process and consider whether Ms. Benjamin could "make an adjustment to other work" based on her RFC, age, education, and work experience. 20 CFR § 404.1520 (a)(4)(v), (g).

### III.    Remaining Grounds

Ms. Benjamin also argues that the ALJ erred in evaluating her credibility and ability to perform past work, among other things. I need not reach these issues as I have already determined that the case must be remanded for the reasons discussed above. Specifically, I express no view on whether the ALJ should give controlling weight to Dr. Miller's opinions or on any other issues except those expressly addressed by this ruling.

### CONCLUSION

Ms. Benjamin's motion for an order reversing or remanding the Commissioner's decision (ECF No. 15) is GRANTED, and the Commissioner's motion to affirm that decision (ECF No. 16) is DENIED. The case is hereby REMANDED.

IT IS SO ORDERED.

                                                          /s/
                                                  Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                November 14, 2016